UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER GIOVANNI CHACON MALDONADO, (A-Number: 220-727-672) | No. 1:26-cv-00628-JLT-EGC (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION |
| v. | [10-DAY DEADLINE] |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner Roger Giovanni Chacon Maldonado is an immigration detainee proceeding with a petition for writ of habeas corpus. (ECF No. 1.)

I.      BACKGROUND

Petitioner is a native and citizen of Venezuela who unlawfully entered the United States on December 23, 2021, as a child in the company of his family. (ECF No. 18 at 19.) The Department of Homeland Security ("DHS") paroled him into the United States shortly thereafter pursuant to 8 U.S.C. § 1182(d)(5), without issuance of charging documents. (*Id*.) Petitioner and his family were instructed to report to the Miami, Florida, Immigration and Customs Enforcement ("ICE") office within sixty days. (*Id*.) When the family failed to appear as ordered, ICE served Petitioner with a Notice to Appear charging him as removable under Immigration and Nationality Act § 240. (*Id*.) On October 22, 2022, he filed an application for relief in the immigration court. (*Id*.)

On June 19, 2024, Petitioner was arrested for felony second degree aggravated battery

1

causing great bodily harm, felony third degree possession of a stolen or fictitious driver's license, and misdemeanor first degree battery. (ECF No. 18 at 30.) On September 13, 2024, the charges were dropped. (ECF No. 18 at 30-31.)

On November 20, 2025, Petitioner was arrested for misdemeanor reckless driving, drag racing, misdemeanor possession of weapon ammunition, and felony third degree possession of a controlled substance. (ECF No. 18 at 32.) While detained for the arrest, on November 21, 2025, Petitioner was taken into ICE custody. (ECF No. 18 at 36.) Petitioner represents that the charges have been dropped, and Respondent does not dispute this. (ECF No. 15-2 at 1.)

On March 18, 2026, an immigration judge found Petitioner removable under INA § 212(a)(7)(A)(i)(I). (ECF No. 18-1 at 3.) Removal proceedings are currently ongoing. (*Id*.)

On January 26, 2026, Petitioner filed a habeas petition commencing this action. (ECF No. 1.) On March 4, 2026, Petitioner filed a first amended petition. (ECF No. 14.) Respondent filed a response on March 25, 2026, and Petitioner filed a reply on April 8, 2026. (ECF Nos. 18, 19.)

II.     DISCUSSION

Petitioner alleges three claims for relief: (1) Petitioner alleges he has Temporary Protected Status ("TPS") pursuant to 8 U.S.C. § 1254a and therefore cannot be detained on the basis of his immigration status; (2) he contends he was deprived of his procedural due process rights when ICE re-detained him without first demonstrating to a neutral arbiter that cause existed for his detention; and (3) he alleges he was denied his substantive due process rights when he was re-detained despite no evidence that he posed a risk of danger or flight. (ECF No. 14 at 6-7.)

Respondent focuses primarily on his argument that detention is mandatory because Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). (ECF No. 18 at 1-2.) Respondent disputes Petitioner's contention that his detention is discretionary under § 1226(a). (*Id*.) Respondent argues that Petitioner remains an "applicant for admission" who may only be released on parole pursuant to 8 U.S.C. § 1182(d)(5). (*Id*. at 9.) Finally, Respondent disputes Petitioner's TPS status contending Petitioner's TPS status was terminated in November 2025. (*Id*. at 10.)

As discussed below, the Court finds merit to his first two claims. Therefore, the Court will recommend the petition be granted and Respondent be directed to release Petitioner. Because

relief is clearly warranted on his first two claims, the Court declines to address the third claim.

   A.  Revocation of Parole

Respondent argues that Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2)(A) because Petitioner remains an applicant for admission no matter that he had been previously released and permitted to live in the country for several years. Respondent argues that release on parole did not provide Petitioner with any liberty interest. This argument has been rejected by this Court and numerous other district courts in this circuit. *See, e.g., Garcia v. Andrews*, 2025 WL 2420068, 1:25-CV-01006-JLT-SAB (E.D. Cal. August 21, 2025) (holding noncitizen released on parole held a protected liberty interest in maintaining out-of-custody status); *J.E.H.G. v. Chesnut*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025) (same); *Oli v. Andrews*, 2026 WL 253425 (E.D. Cal. Jan. 30, 2026) (same); *R.A.N.O. v. Wofford*, No. 1:25-CV-01535-KES-EPG (HC), 2026 WL 40507 (E.D. Cal. Jan. 6, 2026) (same). In these cases, the courts determined that, once the Government decides to release a noncitizen on parole, that individual gains a constitutionally protected liberty interest in remaining out of custody. Thus, Petitioner's release on parole in 2021 and his subsequent four years out of custody created a constitutionally protected liberty interest.

When Respondents re-detained Petitioner, they did not validly revoke Petitioner's parole. Under section 1182(d)(5)(A), "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [designated officials] neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Moreover, due process entitles an alien to notice and an opportunity to be heard in the revocation of his section 1182 parole. *Noori v. LaRose*, No. 3:25-cv-01824-GPC-MSB, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025) (holding "Petitioner was entitled to due process in his parole revocation [including] notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination"); *Araujo v. LaRose*, No. 3:25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (explaining "[d]ue process for parole terminations

requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination").

There is no indication that an authorized official determined that the purpose of Petitioner's parole had been served or that humanitarian reasons and public benefit no longer warranted Petitioner's continued presence in the United States when revoking his parole. Nor is there any evidence that Petitioner received notice of the reasons for revocation of his parole or an opportunity to be heard in order to challenge the revocation. Respondents note he was served with a warrant for his arrest, but the warrant provides no reason for revocation of parole. (ECF No. 18 at 39.) The arrest warrant states only that an immigration officer determined there was probable cause to believe Petitioner was removable from the United States. (ECF No. 18 at 39.) And as noted by Petitioner, the charges were later dropped. Therefore, on this record, it appears Respondents did not validly revoke Petitioner's parole such that he would be subject to detention under section 1225.

In line with the Court's previous cases, *see, e.g., Garcia*, 2025 WL 2420068; *J.E.H.G*, 2025 WL 3523108; *Oli*, 2026 WL 253425; *R.A.N.O.*, 2026 WL 40507, the Court finds that Petitioner's release on supervision created a strong liberty interest in remaining free of detention. As in those previous cases, the Court finds that Respondents' deprivation of Petitioner's liberty interest without proper notice and opportunity to challenge the reasons for detention violated his due process rights.

### B. Temporary Protected Status

As part of the Immigration Act of 1990, Congress created the temporary protected status ("TPS") program. The TPS program provides humanitarian relief to foreign nationals from specified countries and is codified at 8 U.S.C. § 1254a. *Sanchez v. Mayorkas*, 593 U.S. 409, 412, 141 S.Ct. 1809, 210 L.Ed.2d 52 (2021). That relief comes in the form of temporary protection against removal in the face of war, natural disasters, or other extraordinary and temporary conditions. 8 U.S.C. § 1254a; *see also Osman v. Schmidt*, No. 25-CV-286, 2025 WL 870048, at *1 (E.D. Wis. Mar. 20, 2025).

Under § 1254a, the Secretary of DHS may designate a foreign country for TPS when individuals from that country cannot safely return due to armed conflict, natural disaster, or other extraordinary and temporary circumstances. *See* 8 U.S.C. § 1254a(b). The initial designation lasts for 6, 12, or 18 months, at the Secretary's discretion. *See id.* § 1254a(b)(2). Relevant here, on March 9, 2021, DHS Secretary Alejandro Mayorkas designated Venezuela for an 18-month period of TPS, effective March 9, 2021, through September 9, 2022. *See* Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure, 86 Fed. Reg. 13574, 13574 (Mar. 9, 2021). Venezuela's TPS designation was extended multiple times by Secretary Mayorkas permitting existing beneficiaries to seek TPS extensions through October 2, 2026.[1] *See Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1011-1012 (9th Cir. 2025).

Once a foreign country is given a TPS designation, individuals from that country may apply for immigration status. If granted, relevant authorities "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A). Likewise, 8 U.S.C. § 1254a(d)(4), as part of the subsection related to documentation of TPS, provides that a non-citizen with TPS "<u>shall not be detained</u> by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." 8 U.S.C. § 1254a(d)(4) (emphasis added). Under this statute, courts have considered writs of habeas corpus and determined that detained petitioners with TPS cannot remain detained pending lawful immigration proceedings. *See, e.g., Rojas v. Venegas*, No. 1:25-CV-00056, 2025 WL 996421, at *1 (S.D. Tex. Apr. 2, 2025) ("[t]he Court holds that Petitioner is a Venezuelan national with valid Temporary Protected Status and was wrongfully detained under 8 U.S.C. 1254a(a)(1)(A)(i).").

Petitioner is a citizen of Venezuela. (ECF No. 14 at 1.) The parties agree that Petitioner

---

[1] As noted by Petitioner, Secretary Kristi Noem attempted to terminate a portion of the Venezuela TPS program on February 3, 2025. *Nat'l TPS All.*, 150 F.4th at 1012-13. That decision has since been ruled unlawful by a district court. *Nat'l TPS All. v. Noem*, 798 F.Supp.3d 1108 (N.D. Cal. Sept. 5, 2025). The district court's decision was affirmed on appeal. *Nat'l TPS All. v. Noem,* 166 F.4th 739 (9th Cir. 2026). Respondents argue the mandate was stayed by the Supreme Court; however, the Ninth Circuit determined that the stay was not controlling of the issues presented. *Id*. at 754.

was granted TPS. (ECF Nos. 14 at 3; 18 at 10.) His most recent TPS was granted on December 2, 2024, and lasted through April 2, 2025. (*Id.*) Respondents contend that Petitioner did not have TPS when he was arrested on November 21, 2025, because he had failed to re-register for it during the time prescribed in the January 2025 extension order. *See* 90 Fed.Reg. 5961 (Jan. 17, 2025). Petitioner acknowledges that he did not re-register at that time, but he claims he did not lose TPS simply because he did not re-register. (ECF No. 19 at 4.)

In support of their argument, Respondents point to Secretary Mayorkas' order which stated: "Existing TPS beneficiaries, including those registered under the October 3, 2023 TPS designation or the prior March 9, 2021 TPS designation, who wish to extend their status through October 2, 2026, must re-register during the re-registration period described in this notice." Extension of the 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 5961 (Jan. 17, 2025). While that may be so, the statute itself provides that TPS must be formally withdrawn. Pursuant to 8 C.F.R. § 244.14(a)(3), the United States Citizenship and Immigration Services ("USCIS") "may withdraw the status of an alien granted Temporary Protected Status" if, *inter alia*, "[t]he alien fails without good cause to register with DHS annually within thirty (30) days before the end of each 12-month period after the granting of Temporary Protected Status." (emphasis added.) Thus, for an alien to lose TPS, USCIS must formally withdraw it. In addition, the withdrawal of status "shall be in writing and served by personal service." 8 C.F.R. § 244.14(b)(1). Further, if the ground for withdrawal is failure to re-register, the notice shall provide the alien up to thirty (30) days within which to provide evidence of good cause for failure to register. 8 C.F.R. § 244.14(b)(1). Here, there is no evidence that Respondents formally withdrew Petitioner's TPS in accordance with the statute. Thus, Petitioner is correct that his re-detention was unlawful. *See* 8 U.S.C. § 1254a(d)(4).

Aliens may also lose TPS if the USCIS terminates a country's TPS designation. But as previously noted, Secretary Noem's attempt to do so was overturned. *Nat'l TPS All. v. Noem*, 798 F.Supp.3d 1108. Thus, Venezuela's TPS designation was not lawfully withdrawn. Petitioner has submitted evidence that he is a member of the National TPS Alliance that successfully sued to overturn the Secretary's decision and therefore entitled to relief. (ECF No. 15-6.) But even if he

were not, the Ninth Circuit upheld the district court's grant of a "universal vacatur [of the Secretary's decision] extending to non-parties." *Nat'l TPS All. v. Noem*, 166 F.4th at 767-68.

III.   RECOMMENDATION

For the foregoing reasons, the Court hereby RECOMMENDS that the petition be GRANTED and Respondents be ordered to release Petitioner immediately.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **May 26, 2026**                                    _____
                                                             Erin Smy Castllo
                                                             UNITED STATES MAGISTRATE JUDGE